# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| JEFFERY DALE MCCLENDON, | )  |
| *Petitioner*, | ) Case No. 1:11-cr-79, 1:14-cv-308 |
| v. | ) Judge Travis R. McDonough |
| UNITED STATES OF AMERICA, | ) Magistrate Judge Christopher H. Steger |
| *Respondent*. | ) |

## MEMORANDUM OPINION

Petitioner Jeffery Dale McClendon ("Petitioner"), a federal prisoner, timely filed a *pro* se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 66].[1] The government has responded [Doc. 68], and Petitioner filed a reply [Doc. 72]. Petitioner pleaded guilty to two counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) and was sentenced to 444 months of imprisonment [Doc. 54]. Petitioner asserts his counsel was constitutionally ineffective in violation of the Sixth Amendment of the United States Constitution and that the District Court violated the Sixth Amendment by giving him a sentence in excess of the mandatory minimum. Finally, Petitioner has filed a "Motion for Permission to Supplement 2255 Motion" [Docs. 70, 71][2] which the Court will construe as a motion to amend his 2255 Motion. For the reasons that follow, the Court finds that an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion [Doc. 66] and the motion to amend [Docs. 70, 71] shall be **DENIED**.

---

[1] All citations to the district court record are to the docket of Case No. 1-11-cr-79, which is the underlying criminal case.

[2] Document 70 is also a "Motion for Permission to Supplement 2255 Motion" filed by Petitioner. It appears to be essentially the same motion as Doc. 71, although Doc. 71 has some attachments.

**I.     Standards**

   **A.  Threshold Standard**

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence. As a basis for doing so, he may claim that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under Section 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under Section 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a Section 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires

the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### B. Standard for Ineffective Assistance of Counsel

Petitioner raises several issues premised upon an "ineffective assistance of counsel" argument. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under Section 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff,* 734 F.3d at 606. That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney

3

performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective-assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## II. Factual and Procedural Background

### A. Facts

Around midnight on August 26, 2010, Petitioner, along with his co-defendant, Christopher Turner, and a juvenile partner attacked a man who was leaving work. The assailants hit the victim with a gun, took his car keys and cell phone, and forced him into the trunk of his own car, where he remained confined for approximately eleven hours [Doc. 37, Plea Agreement at ¶ 4]. During that time period, Petitioner and his companions went to the victim's residence, stole various items from him, and recruited their friends to help them pawn the stolen items [*Id*.]. Using surveillance videos from the pawn shop, among other things, Chattanooga police officers determined that Petitioner and his two companions had committed the carjacking [*Id*.]. When confronted individually, all three participants confessed their roles in the offense. In addition, they admitted having committed another carjacking on August 28, 2010 [*Id*.]. On that occasion, Petitioner and his companions assaulted a man at gunpoint and placed him in the trunk of his car, but the victim managed to open the trunk and get out of the car while it was moving [*Id*.]. Petitioner and his companions nevertheless went to that victim's residence to rob it, kicked in the wrong door of a triplex, and then beat and robbed the elderly couple they found therein [*Id*.].

### B. Procedural History

A federal grand jury charged Petitioner and Christopher Turner with two counts of aiding and abetting each other in carjacking, in violation of 18 U.S.C. §§ 2119 (Counts One and Three), and two related counts of aiding and abetting each other in brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (Counts Two and Four) [Doc. 2, Indictment; *see also* Doc. 25, Order (amending the indictment to correct a clerical error in Petitioner's name)]. In January 2012, Petitioner pleaded guilty to both Section 924(c)

counts pursuant to a written plea agreement. The United States agreed to move to dismiss the other two counts [Doc. 31, Minute Entry; Doc. 37, Plea Agreement; *see also* Doc. 59, 1/24/12 Plea Tr.[3]]. Petitioner's Plea Agreement explicitly stated,

> No promises have been made by any representatives of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by the defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

[Doc. 37, Plea Agreement ¶ 6(c)].

At the change of plea hearing on January 24, 2012, during which Petitioner pleaded guilty, the magistrate judge reviewed with Petitioner his Plea Agreement [Doc. 59, Transcript of rearraignment]. The magistrate judge inquired as to whether Petitioner had had sufficient time to discuss the Plea Agreement with his counsel; whether he had read and understood the Plea Agreement; whether the signature of the Plea Agreement was his; and whether it represented "any and all understandings that you have with the government?" [*Id.* at 10-12]. Petitioner answered in the affirmative to all questions [*Id.*]. The magistrate judge further asked Petitioner "has anyone made any promise or assurance to you that's not contained in the plea agreement in order to persuade you to accept the agreement" or "threatened you in any way to persuade you to accept the agreement?" [*Id.* at 12]. Petitioner responded "no" to each question [*Id.*]. The magistrate

---

[3] With Petitioner's consent, the plea colloquy was conducted by a magistrate judge, who deemed defendant's plea to be knowing and voluntary. [Doc. 59, 1/24/12 Plea Tr. at 25-27; Doc. 35, Consent; Doc. 32, Report and Recommendation]. This Court subsequently adopted the magistrate judge's recommendation and adjudicated Petitioner guilty [Doc. 39, Order].

judge then explained to Petitioner that the portion of his Plea Agreement in which the government agreed to seek credit for acceptance of responsibility was not binding on the Court when determining the Petitioner's sentence [*Id*. at 13]. She explained that, if the Court decided not to grant Petitioner credit for acceptance of responsibility, he could receive a sentence "that's more severe than you anticipated without opportunity to withdraw your plea" [*Id*. at 14]. Petitioner indicated he understood [*Id*.]. The magistrate judge again asked Petitioner if he had been threatened or forced in any way to plead guilty and "[o]ther than what's in your plea agreement, has anyone promised or suggested you'll receive a lighter sentence or any other form of leniency if you plead guilty?" [*Id.* at 15]. Petitioner stated "no" to both questions [*Id*.]. At the direction of the magistrate judge, the Assistant United States Attorney (AUSA) informed defendant of the minimum and maximum sentences he could receive under both counts to which he was pleading guilty:

> On Count 2 there's a minimum sentence of seven years to a maximum of life. Count 4 there's a minimum sentence of 25 years to a maximum of life. The sentences have to run consecutively, so effectively basically it's a 32 year minimum sentence to a maximum of life.

[*Id*. at 18]. The magistrate judge then stated, "I think [the AUSA] made clear that there's a 32 year mandatory minimum that would then be followed by supervised release [*Id*. at 18]. The magistrate judge asked Petitioner if, knowing this, he still wanted to plead guilty and he said, "Yes" [*Id*. at 19]. The magistrate judge then explained that the District Court would apply "the advisory sentencing guidelines" to his case and asked if Petitioner understood that "the sentence that's ultimately imposed by the Court may be different from any estimate of the sentence that your attorney has given you" [*Id*. at 21]. Petitioner stated "yes," indicating that he did understand [*Id*.]. Finally, the magistrate judge asked Petitioner, "I want to make sure that you know there's no guarantee that you'll only be

7

sentenced to the mandatory minimum. Do you understand that?" [*Id*. at 23]. Petitioner responded, "[y]es" [*Id*.].

In May 2012, exactly one week before the scheduled sentencing hearing on May 10, 2012, Petitioner filed a motion to withdraw his guilty plea and proceed to trial instead. He alleged that he had not been accurately informed about his sentencing exposure and that, as a result, his guilty plea was not knowing, intelligent, and voluntary [Doc. 41, Motion to Withdraw Plea of Guilty; *see also* Doc. 31, Minute Entry]. That same day, Petitioner's counsel, Russell Leonard, moved to withdraw from further representing Petitioner, citing Petitioner's "obvious lack of faith in [counsel's] advice" [Doc. 42, Motion to Withdraw as Counsel]. On May 7, 2012, after conducting a hearing, the magistrate judge granted Mr. Leonard's motion to withdraw as counsel and appointed attorney Steven Moore to represent Petitioner [Doc. 44, Minute Entry; Doc. 45, Order; *see also* Doc. 55, 5/07/12 Hr'g Tr. 6-7].

At the start of the scheduled sentencing hearing on May 10, 2012, the Court questioned Petitioner about the basis for his motion to withdraw his guilty plea. Petitioner admitted that, before he pleaded guilty, he knew that he faced a maximum possible punishment of life; that no one could guarantee what sentence he would receive; that he was not forced to plead guilty; that he was not lying during the plea colloquy when he swore that he was guilty of the charged offenses; that he had enough time to decide whether to plead guilty; and that he had no further questions about it [Doc. 56, 5/10/12 Hr'g Tr. 5-8]. After Petitioner made these admissions, the Court asked, "who misled you?" [*Id.* at 9]. Petitioner responded, "I guess myself" [*Id.*]. The Court thus concluded that Petitioner had not identified any legitimate reason to withdraw his guilty plea but was attempting to do so merely because he did not wish to be sentenced [*Id*. at 10]. The Court thereafter denied Petitioner's motion to withdraw his plea [*Id*. at 13].

The Court then asked whether Petitioner had discussed the presentence report ("PSR") with counsel, and Petitioner said he had not yet done so [*Id*. at 14]. Noting that the PSR was short, the Court recessed so that Petitioner could discuss it with Mr. Moore [*Id*. at 15]. When the proceeding resumed, Mr. Moore indicated that he needed additional time to discuss the case with Petitioner and possibly prepare objections to the PSR. He thus requested a continuance for sentencing [*Id*. at 16-17]. The Court granted that request and continued the hearing until the following day [*Id*. at 19; *see also* Doc. 50, Minute Entry].

On May 11, 2012, when the sentencing hearing resumed, Mr. Moore informed the Court that he and Petitioner had adequate time to discuss the PSR and had no objections to it [Doc. 57, 5/11/12 Hr'g Tr. at 4]. The Court referenced the statutorily authorized range of punishment (32 years to life imprisonment), as well as the 18 U.S.C. § 3553(a) factors [*Id*. at 5-6]. On Petitioner's behalf, Mr. Moore requested the statutory minimum sentence. When invited to personally allocute, Petitioner declined to speak [*Id*. at 6-10]. The Court then referenced the facts of the offense and noted that the mandatory minimum sentence of 32 years was appropriate for co-defendant Christopher Turner, but not for Petitioner. The Court reasoned that, among other things, Petitioner's prior criminal record was far worse than his co-defendant's. [*Id*. at 10-14]. The Court stated that, to avoid creating a sentencing disparity between the differently situated defendants, it would sentence Petitioner to more than the mandatory minimum [*Id.* at 17]. The Court explained that the Court was giving Petitioner five more years of imprisonment than his co-defendant because Petitioner had not accepted responsibility for his actions and because he presented a greater threat of harm to the public than his co-defendant [*Id*. at17]. The Court observed Petitioner's criminal history beginning at the age of 14 years old which indicated he had been "out-of-control" much of his life [*Id*. at 14]. In examining the Petitioner's criminal

9

history, the Court looked at his prior criminal convictions and an arrest [*Id*. at 14-16]. The Court concluded Petitioner's sentence needed to take into account his lack of remorse, the need to protect the public, and his likelihood of recidivism, factors which did not apply in the same degree to the co-defendant [*Id*. at 17]. The Court ultimately sentenced Petitioner to 37 years' imprisonment [*Id*. at 17; *see also* Doc. 54, Judgment (noting that Petitioner was sentenced to consecutive terms of 100 months on Count Two and 344 months on Count Four; also dismissing Counts One and Three, pursuant to the plea agreement)].

Petitioner appealed, arguing that the Court "abused its discretion and violated his right to due process when it denied his request to continue proceedings concerning his motion to withdraw his guilty plea and granted only a one-day continuance of his sentencing." [Doc. 60, *United States v. McClendon*, Case No. 12-5603, slip op. at 2, 6th Cir. Mar. 11, 2013]. The Sixth Circuit rejected Petitioner's argument and affirmed his convictions and sentence, explaining its reasoning as follows:

> McClendon's only reasons for requesting the withdrawal of his guilty plea were that he was [allegedly] unaware of the mandatory minimum sentence of thirty-two years of imprisonment and that the attorney who represented him initially had [allegedly] told him that he would get a maximum of seventeen years of imprisonment. However, the record belies these assertions. As a result, McClendon has not shown that he was prejudiced by the district court's denial of his request for a continuance concerning his motion to withdraw his guilty plea, and thus he has not demonstrated that the district court abused its discretion in denying the request.

[*Id*. at 3.] The Sixth Circuit concluded, "[g]iven McClendon's refusal to speak on his own behalf at sentencing, and because counsel mentioned McClendon's acceptance of responsibility at sentencing, McClendon has not demonstrated how being given more time to discuss issues concerning his remorse and his acceptance of responsibility would have helped him at sentencing" [*Id.*]. Petitioner sought *certiorari*, which the Supreme Court denied on December

10

2, 2013 [Doc. 65, Denial of *Certiorari*]. This timely Section 2255 motion followed [Doc. 66, Section 2255 Motion].

**III.   Discussion**

Petitioner asserts two issues. First, his attorney, Mr. Leonard, rendered ineffective assistance of counsel in violation of the Sixth Amendment in relation to his guilty plea. Second, the District Court "lacked jurisdiction to impose a sentence above the mandatory minimum authorized by law (32 year sentence)," and that, by relying on "uncharged offenses" to increase his sentence above the mandatory minimum, the District Court "has taken the role of the jury, a Sixth Amendment violation" [Doc. 66, 2255 Motion at 7].

   **A.  Ineffective Assistance of Counsel**

Petitioner alleges that Mr. Leonard was constitutionally ineffective in several respects: for allegedly misadvising Petitioner about his sentencing exposure; for not advising Petitioner that the sentences for each count would be consecutive; for allegedly coercing him to plead guilty; and for not advising him that the facts set forth in the plea agreement constituted "relevant conduct" under the Sentencing Guidelines and could be used to enhance his sentence [Doc. 66,§ 2255 Motion at 4-5, 8]. According to Petitioner, Mr. Leonard advised him that he would receive a sentence of imprisonment between seventeen years and 25 years. Petitioner also asserts Mr. Leonard somehow coerced him into pleading guilty and coached him on how to answer the Magistrate Judge's questions at the rearraignment to give the Magistrate Judge the false impression that he was knowingly and voluntarily pleading guilty [Id. at 5].

"[A] habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy." *Garnica v. United States*, 361 F. Supp.2d 724, 733 (E.D. Tenn. 2005) (citing *Warner v. United States*, 975

F.2d 1207, 1212 (6th Cir. 1992) and *United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998)). In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

> … the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977). Absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.") (internal punctuation and citations omitted).

The record is clear that, at his rearraignment, Petitioner was unambiguously and unequivocally advised that his *minimum* sentence would be 32 years, and that he could very well be sentenced to more – up to life imprisonment. The AUSA explicitly told Petitioner that he would receive a minimum of seven years' imprisonment on one count and twenty-five years' imprisonment on the other count for a total, minimum sentence of 32 years' imprisonment. While this explanation did not use the word, "consecutive," it explained clearly that his sentences on each counts would be served consecutively. Petitioner stated on the record he understood this fact and that he had no other hidden or secret agreements with the government which would result in a lesser sentence. He also acknowledged that, if he had been advised by his counsel that his sentence would be a certain length, that promised sentence could also change and that the Court was not bound by anything his attorney may have told him. His Plea Agreement stated in part,

"[t]he defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553" [Doc. 37, Plea Agreement ¶ 6]. Defendant affirmed to the Magistrate Judge at the rearraignment that he had read his Plea Agreement, that he had reviewed it with his attorney adequately, and that he understood it. He also affirmed that he was not being forced by anyone to plead guilty. The Magistrate Judge scrupulously followed the required procedures of Fed. R. Crim. P. 11 to ensure that Petitioner's guilty plea was voluntary and knowing.

Petitioner has filed with his reply brief a "Pro Se Declaration" in which he avers he was not informed of the full consequences of his pleading guilty under the Plea Agreement [Doc. 72, Pro Se Declaration]. Petitioner attempts to explain his statements at his rearraignment by stating in his declaration that he was just doing what Mr. Leonard told him to do. However, at the Sentencing Hearing on May 10, 2012, *after* he had obtained new counsel, the Court questioned him closely about his guilty plea. Petitioner did not tell the Court that Mr. Leonard had coerced him into entering the plea. In fact, he admitted that the only person who had misled him about his potential sentence was himself. The Court does not find Petitioner's declaration to constitute clear and convincing evidence that he was misled or coerced by Mr. Leonard in any respect regarding his guilty plea. The Court finds Petitioner is bound by his testimony under oath at the arraignment and concludes his ineffective assistance of counsel claim in his 2255 Motion fails. No hearing is necessary as to this issue.

### B. Sentence in Excess of Statutory Mandatory Minimum

#### 1. This Claim is Procedurally Barred.

Petitioner's also argues that his sentence is unconstitutional because it exceeds the

statutorily required mandatory minimum. This challenge is procedurally defaulted because it could have been litigated on direct appeal but was not. *Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). Thus, to obtain review, a petitioner must show that: (1) he had good cause for not raising the claims earlier and would suffer "actual prejudice" if they were not now reviewed; or (2) he is actually innocent. *See*, *e.g.*, *id*. at 622 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The hurdle a petitioner faces to excuse procedural default is "intentionally high," because "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Because Petitioner has not asserted any excuse for his procedural default, this claim can be summarily dismissed.

In his reply brief, Petitioner attempts to assert an ineffective assistance of counsel claim by alleging that his second attorney, Mr. Moore, was ineffective for not raising this issue upon direct appeal. This argument, however, has not been properly raised. Issues raised for the first time in a reply brief are considered waived. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived."); *Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007) (argument raised for first time in reply brief is waived).

### 2. Argument that Sentence is in Excess of Mandatory Minimum is Meritless.

In any event, this second issue fails on its merits. Petitioner claims that this Court "lacked jurisdiction" to impose any sentence above the 32-year mandatory minimum because the Court, in violation of the Sixth Amendment, considered facts not charged in the indictment to increase

his statutory range of punishment [Doc. 66, § 2255 Motion at 7, Doc. 72 Petitioner's Reply at 8]. According to Petitioner, the Court committed an "*Alleyne*" violation when it sentenced him to more than his 32-year mandatory minimum. Petitioner's argument evinces a misunderstanding of the holding in *Alleyne v. United States*, 530 U.S. 466 (2013).

In *Alleyne*, the Supreme Court held that the sentencing court could not rely upon uncharged and unproven facts, other than prior criminal convictions, to raise the *statutorily* mandated minimum sentence of a convicted defendant. Similarly, in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed *statutory* maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added). Therefore, except for prior convictions, the court may not rely upon uncharged facts in determining statutorily mandated minimum and maximum sentences for a defendant. Once those prescribed statutory minimum and maximum sentences are determined, the sentencing court may consider facts outside the indictment, pursuant to the United States Sentencing Guidelines, to determine an appropriate sentence for the defendant within the statutorily mandated minimum and maximum sentences. *See e.g., United States v. Moore*, 634 Fed. App'x 483, 488 (6th Cir. 2015) (where court acknowledged the statutorily mandated minimum sentence of five years' imprisonment and the statutorily mandated maximum sentence of life imprisonment, *Alleyne* did not prohibit the court from exercising its discretion to sentence the defendant to a term of imprisonment more than the aforementioned minimum but less than the aforementioned maximum based on the court's own factual findings); *Gilliam v. United States*, Case No. 2:06-cr-50, 2:13-cv-201, 2016 WL 4119764 *5 (E.D. Tenn. July 28, 2016) ("*Alleyne* applies only to findings of fact which increase the statutory penalty for an offense; it does not apply to findings

by the trial judge which increase a sentence within the allowable statutory range, *Alleyne, supra*, at 2163. Petitioner's sentences were within the maximums established by the relevant statutes.") In the instant case, Petitioner's sentence was within the statutorily-mandated range of imprisonment for his convictions; namely, 32 years to life imprisonment. Petitioner has not identified any judicial fact-finding that increased his *statutory* range of punishment, so his sentencing claim lacks merit.

C. **Motion to Amend 2255 Motion**

Petitioner seeks to amend his 2255 Motion with the claim that his Fifth Amendment due process rights and his Sixth Amendment right to a jury were unconstitutionally abridged because the original indictment in this case erroneously referred to Petitioner as "JEFFERY DALE TURNER" instead of "JEFFERY DALE MCCLENDON." The Court notes that Petitioner's co-defendant was Christopher D. Turner and that, on November 3, 2011, the government moved to amend the indictment to reflect that Petitioner's name was Jeffery Dale McClendon [Doc. 24]. This motion was granted on December 1, 2011, to modify the name of Petitioner to Jeffery Dale McClendon as to each count in the indictment [Doc. 25, December 1, 2011 Order]. At the rearraignment hearing on January 24, 2012, prior to beginning the plea colloquy and taking his guilty plea, the Magistrate Judge confirmed that the indictment had been amended to reflect the correct name of the Petitioner.

A motion to amend or supplement a Section 2255 motion will be denied where it is filed after the one year limitation period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of Federal Rule of Civil Procedure 15(c)(2). *Howard v. United States*, 533 F.3d 472, 457-76 (6th Cir. 2008); *see also*, 28 U.S.C. § 2255(f) (a one year limitations period applies to a motion filed under 28 U.S.C. § 2255). Rule 15 states that an

amendment may "relate back" to the date of the original pleading if the proposed claim "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. Fed. R. Civ. P. 15(c)(2). In the context of habeas proceedings, the Supreme Court has interpreted that requirement to mean that the new claims must be based on the "same core facts" relied upon in a timely-filed petition; a late-filed claim is unreviewable if it turns upon "events separate in 'both time and type' from the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 657 (2004). Without the requirement of a "common core of operative facts," the "limitation period would have slim significance." *Id*. at 662. It is insufficient if the new claim merely arises from the same trial, conviction, or sentence. In such an instance, the new claim does not relate back to the original claim or claims. *Id.*; *see also Wiedbrauk v. Lavigne*, 174 F. App'x 993, 1001-02 (6th Cir. 2006) (holding that several claims in a motion to amend were time-barred and unreviewable because they did not "share a factual basis with any of the [timely-filed] claims.")

Petitioner filed his motion to supplement on May 4, 2015, long after the applicable statute of limitations had expired, asserting a claim based upon the core fact that the Government erred in the original indictment by naming Petitioner as Jeffery Dale "Turner." This new claim cannot relate back to the original 2255 Motion because it is not based on the same core facts as the original 2255 Motion. Therefore, this new claim is time-barred, and it would be futile to grant the motion. The motion to amend Petitioner's 2255 Motion
[Docs. 70, 71] shall be **DENIED**.

IV.     **Conclusion**

The Court has carefully reviewed Petitioner's 2255 Motion and the motion to amend and finds no merit in Petitioner's claims or the motion to amend. For the reasons stated herein, the Court finds that no evidentiary hearing for this motion brought pursuant to 28 U.S.C. § 2255 is

necessary.  The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief.  The 2255 Motion [Doc. 66] and the motion to amend the 2255 Motion [Docs. 70, 71] will therefore be **DENIED**.

**SO ORDERED.**

**ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**